UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DONALD BERNARD SR.,<br><br>Defendant. | Crim. Nos.: 14-710 (JLL), 16-004 (JLL) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>LINDA WATKINS-BRASHEAR | Crim No. 15-636 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of the Newark Watershed Conservation and Development Corporation's ("NWCDC") motion to modify the restitution obligations of Defendants Donald Bernard, Sr. ("Bernard") and Linda Watkins-Brashear ("Brashear"). (ECF No. 41).[1] The Government has opposed this motion, (ECF No. 47), and the NWCDC has submitted a reply. (ECF No. 50). In addition to this briefing, the Pension Benefit Guaranty Corporation ("PBGC") has sought leave to file a response to the NWCDC's motion. (ECF No. 46). The Court has considered these submissions and decides this matter without oral argument. For the reasons set forth below, the Court denies the NWCDS's motion to modify Bernard and

---

[1] ECF numbers are taken from the 14-710 docket.

Brashear's restitution obligations.

## BACKGROUND

All of the parties and the Court are familiar with the facts of this case. As such, the Court will only set forth the facts critical to the resolution of this motion. Both Bernard and Brashear entered into plea agreements with the Government before this Court in relation to their roles in the bribery/no-bid contract scandal at the NWCDC. (ECF No. 41-1 at 2). Pursuant to those plea agreements, Bernard and Brashear agreed to make restitution payments to the NWCDC in amounts of $956,948 and $999,683, respectively, and to the Internal Revenue Service in amounts of $200,172, and between $275,000 and $350,000, respectively. (ECF No. 47 at 2). On July 13, 2017, this Court sentenced Bernard to a term of imprisonment of 96 months with a subsequent 3-year period of supervised release and ordered Bernard to pay $1,157,120 in restitution, $956,948 of which was to be distributed to the NWCDC and the remainder to the IRS. (ECF No. 47 at 3). On September 22, 2017, this Court sentenced Brashear to a term of imprisonment of 102 months with a subsequent 3-year period of supervised release and ordered Brashear to pay $1,304,571.54 in restitution, $999,683.54 of which was to be distributed to the NWCDC and the remainder to the IRS. (ECF 0No. 47 at 4).

The NWCDC now seeks to modify these restitution orders, arguing that the Court should allow Bernard and Brashear to satisfy their restitution obligations by "waiving their claims against" against the NWCDC defined-benefit pension plan. (ECF No. 41-1 at 2). The NWCDC claims that without such a modification, the PBGC "may pay benefits to [Bernard and Brashear] and thereby increase the amount which the NWCDC bankruptcy estate will have to pay to PBGC on

their underfunding claim," effectively increasing the damage Bernard and Brashear have done to the NWCDC and further compensating themselves in the process. (ECF No. 41-1 at 2–3).

## ARGUMENT

The NWCDC seeks to modify these restitution orders under the Mandatory Victims Restitution Act (MVRA). (ECF No. 41-1 at 7). The MVRA provides that:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3664(k). Thus, this Court has authority to modify the restitution orders once it receives notice of a material change in Bernard and Brashear's economic circumstances and after it receives "certification from the Attorney General that those owed restitution have been informed of the defendant's changed circumstances." *United States v. Jackson-El*, 179 F. App'x 147, 149 (3d Cir. 2006).

The NWCDC has failed to demonstrate a material change in economic circumstances and this Court has not received certification from the Attorney General. As to the economic circumstances, the NWCDC admits that neither Bernard nor Brashear have made any restitution payments to date. (ECF No. 41-1 at 2). Instead, the NWCDC claims that their assertion of pension claims totaling approximately $600,000 constitutes a material change in economic circumstances. (ECF No. 41-1 at 9). However, neither Bernard nor Brashear has received any payments from the pension plan, nor is it clear that

the PBGC—now the statutory trustee of the pension plan's assets—will actually distribute funds to Bernard and Brashear. (ECF No. 35 at 5:11–16; ECF No. 46-2 at 5, 7). A defendant's anticipated or continued failure to pay restitution benefits does not constitute a change in economic circumstances. *See United States v. Balter*, 164 F. App'x 211, 213 (3d Cir. 2005) (finding that a defendant's "inability to generate income via prison work assignments hardly constitutes a material change in his economic circumstances," where he had only paid a total of $500 in restitution over ten years). In any event, Bernard and Brashear's pension claims, or at the very least, their intent to file these pension claims, were known to the Court as early as November of 2016, (*see generally* ECF No. 35), so the fact that these pension claims continue to linger cannot be considered a material change in economic circumstances. Furthermore, the Attorney General has not certified that there has been a material change in economic circumstances. (ECF No. 47 at 6). Thus, the NWCDC has failed to show that circumstances allow this Court to modify Bernard and Brashear's restitution orders.

In any event, when the Court learned of Bernard and Brashear's pension claims at the hearing in November of 2016—before either defendant was sentenced—Mr. David M. Hoffman, a lawyer for 31 ex-employees of the NWCDC seeking to recover their interest in the pension plan, made the same request that the NWCDC is making now: that the pension plan benefits "otherwise payable to Bernard and [Brashear] should be cancelled" so that those funds could go to other beneficiaries. (ECF No. 15). At that time, the Court described the situation as "nebulous," because "we are not even sure if [Bernard and Brashear] have pension benefits to take away . . . to begin with." (ECF No. 35 at 9:2–5).

The Court declined to make a decision on Mr. Hoffman's request at that point, and urged Mr. Hoffman to make a formal motion before the Court. (ECF No. 35 at 11:13–12:11). That motion was never filed, and now, the NWCDC is making the same request. Today, the facts remain the same: the PBGC has not made a final decision as to whether it will award pension benefits to Bernard or Brashear and the NWCDC is still in the midst of its Chapter 11 bankruptcy proceeding. This is all to say that the NWCDC's claimed material change in economic circumstances is hardly a change and certainly not material.

## CONCLUSION

The NWCDC's motion is thus denied and the Court need not address the question of whether a victim can reach the ERISA-protected pension benefits of a defendant under the MVRA. An appropriate Order accompanies this Opinion.

DATED: February 11, 2019

HON. JOSE L. LINARES
Chief Judge, United States District Court